Shorall McGoldrick Brinkmann
1232 east Missouri avenue
phoenix, arizona 85014
602.230.5400
602.230.5432 (fax)

Tom Shorall, Jr., #010456
Asa W. Markel, #022578
Kim Robert Maerowitz, #023566
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DANIEL FELIX and DORTHY FELIX,<br>            Plaintiffs,<br><br>      vs.<br><br>PIC-N-RUN, INC., an Arizona corporation, MILAM BUILDING ASSOCIATES, INC., a Texas corporation, STELLA JEANETTE ELDRIDGE, VERNON W. ELDRIDGE, the ENVIRONMENTAL PROTECTION AGENCY, an agency of United States Federal Government, THE NAVAJO NATION, THE NAVAJO NATION ENVIRONMENTAL PROTECTION AGENCY, an agency of the Navajo Nation, SPENCER RIEDEL, SERVICE STATION EQUIPMENT & SALES CO. INC., an Arizona corporation, the ESTATE OF SYBIL BALDWIN,<br>            Defendants. | Cause No. 3:09 – cv -8015-JAT<br><br>**FIRST AMENDED COMPLAINT** |

For their Complaint, Plaintiffs DANIEL FELIX and DORTHY FELIX (hereinafter jointly referred to as "Felix"), allege as follows:

## THE PARTIES

1. Felix has done business in the State of Arizona in the name of Shiprock Construction Company, an unincorporated business.

2. Defendant PIC-N-RUN, INC ("Pic-N-Run") is an Arizona corporation doing business in the State of Arizona.

3. Defendant MILAM BUILDING ASSOCIATES, INC. ("Milam") is, upon information and belief, a Texas corporation doing business in the State of Arizona.

4. Defendants STELLA JEANETTE ELDRIDGE and VERNON W. ELDRIDGE (hereinafter jointly referred to as "Eldridge") are officers of Milam or represented themselves as officers of Milam and/or set themselves out as doing business as Milam.

5. Defendant THE ENVIRONMENTAL PROTECTION AGENCY ("EPA") is an agency of the United States Federal Government.

6. Defendant THE NAVAJO NATION ("Navajo Nation") is a Native American tribe.

7. Defendant THE NAVAJO NATION ENVIRONMENTAL PROTECTION AGENCY ("NNEPA") is an agency of the Navajo Nation.

8. Defendant SERVICE STATION EQUIPMENT & SALES CO. INC., ("Service Station Equipment") is an Arizona corporation doing business in the State of Arizona.

9. Defendant SPENCER RIEDEL ("Riedel") is an officer of Service Station Equipment or represented himself as an officer of Service Station Equipment and/or held himself out as doing business as Service Station Equipment.

10. Defendant ESTATE OF SYBIL BALDWIN represents the interests of Decedent Sybil Baldwin, who leased land from Defendant Navajo Nation, on which Defendant Pic-N-Run operates a convenience store and gas station in

Chinle, Arizona. Decedent Baldwin, and her current co-conservators have been subleasing the subject property to Defendant Pic-N-Run and/or its owner, Ed Flores.

## JURISDICTION, VENUE AND NOTICE

11. Jurisdiction and venue over count one of this First Amended Complaint is provided by 42 U.S.C. § 6972(a).

12. Jurisdiction over counts two, three, four, five, six, seven, eight, nine, and ten of this First Amended Complaint exists as supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). This action is properly brought in this District pursuant to 42 U.S.C. § 6972(a).

13. All the acts and events complained of in this First Amended Complaint occurred in the State of Arizona.

14. Prior to the filing of the original Complaint, each of the Defendants against whom the claim pursuant to 42 U.S.C. § 6972(a) contained in count one is alleged, along with the EPA Administrator, the EPA Regional Administrator, and the United States Attorney General, was served with a notice of the violations alleged herein. The notice was sent via registered mail, return receipt requested, pursuant to 40 C.F.R. § 254.2.

15. The statutory violations alleged herein include release of "hazardous waste" as defined by subchapter III of the Resources Conservation Recovery Act ("RCRA"), 42 U.S.C. § 6921. Pursuant to the express exemptions for actions brought under subchapter III, contained in 42 U.S.C. § 6972(b) & (c), the RCRA delay after notice requirements do not apply.

## THE UNDERLYING FACTS

16. The Navajo Nation is the owner of real property located at the southeast corner of the intersection of Navajo Route 7 and C Street in Chinle,

Apache County, Arizona (the "property"). The property is governed by both the EPA and NNEPA.

17. For many years, Sybil Y. Baldwin operated a convenience store and gas station, under the name Baldwin's Mini Mart, pursuant to a lease of the property by the Navajo Nation to Baldwin. On December 23, 1995, the lease from the Navajo Nation to Baldwin was renewed.

18. On December 9, 1997, Baldwin subleased the premises to Pic-N-Run for the operation of a convenience store and gas station. Pic-N-Run operated a gas station on the property from that date to the present.

19. In 2004, Pic-N-Run removed three underground gasoline storage tanks ("USTs") from the property. In 2006, EPA and NNEPA claimed to have assessed the status of the removal of the USTs and required no further clean-up or other action at the property.

20. On July 12, 2004, Pic-N-Run entered into an agreement with Milam and/or Eldridge wherein Milam and/or Eldridge agreed to provide all labor, equipment, and materials for the remodeling of the Pic-N-Run convenient store and gas station located at the property. Such work included construction of above-ground storage tanks.

21. On December 24, 2004, Milam and/or Eldridge entered into an agreement with Felix, wherein Felix, as a subcontractor, agreed to form and/or pour concrete for the remodeling at the property.

22. On July 31, 2007, Pic-N-Run filed a Complaint in the District Court of the Navajo Nation, Judicial District of Chinle, Arizona against Felix, Milam, and Eldridge, alleging, among other things, that on March 21, 2005, an employee of Felix drove a stake into an underground gasoline supply line at the property, causing a gasoline leak.

23. On October 17, 2005, Riedel individually and on behalf of Service Station Equipment sent a letter to NNEPA, copied to Pic-N-Run, stating that the gasoline spill had actually occurred in September 2005 and was immediately detected. The letter further stated that Service Station Equipment had immediately commenced remediation of the affected soil, and would continue such remediation until contamination of the soil had been significantly reduced. Felix was invoiced for and paid for testing of the soil and such remediation, through their insurance coverage. Felix first became aware of the October 21, 2005 letter in February 2009.

24. There is still soil contamination from release of hazardous waste at the property and groundwater contamination extending to property boundaries and beyond, creating an imminent and substantial endangerment to the public health and environment. The property characterization data indicate that, throughout the property, there have been past hazardous waste releases containing organic lead.

25. Through written correspondence from late 2006 through the present, EPA and NNEPA have required that Felix bear primary or sole responsibility for clean-up of hazardous waste at the property.

26. Felix has incurred, and will continue to incur, expenses in relation to the clean-up of the property required by EPA and NNEPA in an amount which exceeds the jurisdictional amount of this Court.

## COUNT ONE

(Declaratory Relief Under RCRA Against All Defendants)

27. Felix realleges the allegations contained in paragraphs one through 26, above.

28. This Count is brought pursuant to 42 U.S.C. § 6972(a), RCRA.

29. By virtue of it being the owner of the property, the Navajo Nation is the owner of a facility from which hazardous waste is being released, within the meaning of 42 U.S.C. § 6972(a). The NNEPA is both an agent of the Navajo Nation, and with its authority over environmental safety at the property, an operator of a facility within the meaning of 42 U.S.C. § 6972(a). Specifically, as owner and operator of the relevant facility, the Navajo Nation and NNEPA failed to:

   a.   Maintain a containment and detection system for hazardous waste at the property. 40 C.F.R. § 264.193.

   b.   Monitor and inspect the facility often enough to detect leaks, and keep a schedule of such inspections. 40 C.F.R. §§ 264.15(a) and (b).

   c.   Monitor and inspect the relevant gasoline tanks often enough to detect leaks. 40 C.F.R. § 264.195.

   d.   Cease using the relevant gasoline tank after a leak, remove the tank from the property, and notify the EPA Regional Administrator within twenty-four (24) hours of the leak, and then file a report with the EPA within thirty (30) days thereafter. 40 C.F.R. § 264.196.

   e.   Maintain a contingency plan for the release of gasoline at the property, which plan was required to be used at the time of any gasoline leak. 40 C.F.R. § 254.51.

   f.   Appoint an emergency coordinator for the occurrence of any leaks, who was required to immediately identify the precise cause of the leak, notify local authorities of the leak, and immediately arrange for treatment of the affected area. 40 C.F.R. § 264.56.

   g.   Train all employees, including the emergency coordinator, at the property to act in compliance with EPA regulations. 40 C.F.R. § 264.16.

   h.   Remove or remediate all residue, contaminated system components, and contaminated soils after any leak.  40 C.F.R. § 264.197.

   i.   Ensure the ability to remediate any damage from gasoline leaks by maintaining insurance coverage in compliance with EPA regulations.  40 C.F.R. § 264.147(a).

   30.   By virtue of their operation of a gas station located at the property, Pic-N-Run and the Estate of Sybil Baldwin are operators of a facility where hazardous waste was released within the meaning of 42 U.S.C. § 6972(a).  The Estate of Sybil Baldwin also carries owner/operator liability for Pic-N-Run's gas station by virtue of the Estate being Pic-N-Run's sublessor for the underlying property.  Specifically, as operators of the relevant facility, Pic-N-Run and Estate of Sybil Baldwin failed to:

   a.   Maintain a containment and detection system for hazardous waste at the property.  40 C.F.R. § 264.193.

   b.   Monitor and inspect the facility often enough to detect leaks, and keep a schedule of such inspections.  40 C.F.R. §§ 264.15(a) and (b).

   c.   Monitor and inspect the relevant gasoline tanks often enough to detect leaks.  40 C.F.R. § 264.195.

   d.   Cease using the relevant gasoline tank after a leak, remove the tank from the property, and notify the EPA Regional Administrator within twenty-four (24) hours of the leak, and then file a report with the EPA within thirty (30) days thereafter.  40 C.F.R. § 264.196.

   e.   Maintain a contingency plan for the release of gasoline at the property, which plan was required to be used at the time of any gasoline leak.  40 C.F.R. § 254.51.

f.   Appoint an emergency coordinator for the occurrence of any leaks, who was required to immediately identify the precise cause of the leak, notify local authorities of the leak, and immediately arrange for treatment of the affected area.  40 C.F.R. § 264.56.

g.   Train all employees, including the emergency coordinator, at the property to act in compliance with EPA regulations.  40 C.F.R. § 264.16.

h.   Remove or remediate all residue, contaminated system components, and contaminated soils after any leak.  40 C.F.R. § 264.197.

i.   Ensure the ability to remediate any damage from gasoline leaks by maintaining insurance coverage in compliance with EPA regulations.  40 C.F.R. § 264.147(a).

31.   By virtue of their involvement in the construction at the property alleged to have contributed to the soil contamination, Milam and Eldridge are contributors to and generators of a hazardous waste release that presents an imminent and substantial endangerment to the public health and environment within the meaning of 42 U.S.C. § 6972(a).  Specifically, as generators of hazardous waste at the relevant facility, Milam and Eldridge failed to:

a.   Determine if any gasoline leaks resulted in hazardous waste.  40 C.F.R. § 262.11.

b.   Maintain hazardous waste in containers for no more than ninety (90) days in the event a permit for such waste was not obtained from the EPA.  40 C.F.R. § 262.34.

c.   Comply with EPA reporting and record-keeping regulations for the relevant hazardous waste.  40 C.F.R. §§ 262.12 and .40.

32.   By virtue of their involvement in the testing and claimed remediation, including treatment and disposal, of the soil contamination at the property and

representations relating thereto, Service Station Equipment and Riedel are contributors to and generators of a hazardous waste release that presents an imminent and substantial endangerment to the public health and environment within the meaning of 42 U.S.C. § 6972(a).  Specifically, as generators of hazardous waste at the relevant facility, Service Station Equipment and Riedel failed to:

  a. Properly determine the extent of the hazardous waste.  40 C.F.R. § 262.11.

  b. Properly test the hazardous waste in accordance with EPA requirements.  40 C.F.R. § 262.11.

  c. Comply with EPA reporting and record-keeping regulations for the relevant hazardous waste.  40 C.F.R. §§ 262.12 and .40.

  33. The property characterization data indicate that, throughout the property, there have been past hazardous waste releases containing organic lead.  Lead and the constituent elements of gasoline are classified as hazardous substances under 40 C.F.R. §§ 261.31 and .32.  However, EPA and NNEPA have improperly failed to require further clean-up of previous releases of hazardous waste at the property, as required by 42 U.S.C. § 6961(a), and have improperly required Felix to bear primary or sole responsibility for the present clean-up at the property, and are proper parties pursuant to 42 U.S.C. § 6972(a).

  34. Felix is entitled to a declaratory judgment pursuant to 42 U.S.C. § 6972 and 28 U.S.C. § 2201 and/or equitable relief entitling Felix to recover all costs incurred to date to investigate and respond to the claimed contamination at the property.

  35. Felix is entitled to a declaratory judgment pursuant to 42 U.S.C. § 6972 and 28 U.S.C. § 2201 determining that Defendants are solely or partially

liable for investigative and response costs which are incurred in the future relating to the contamination at the property.

## COUNT TWO

(Recovery of Remedial Action Costs under A.R.S. § 49-285 Against Pic-N-Run and Baldwin)

36. Felix realleges the allegations contained in paragraphs one through 35, above.

37. Felix has incurred certain costs and will incur further costs as a result of the mitigation of hazardous substances at the property which were released prior to and during the time Pic-N-Run and/or Baldwin operated a gas station at the property.

38. Felix is also entitled to a declaratory judgment that Pic-N-Run and Baldwin are liable for future remedial action costs.

## COUNT THREE

(Negligence Against Pic-N-Run, Baldwin, Milam, and Eldridge)

39. Felix realleges the allegations contained in paragraphs one through 38, above.

40. Pic-N-Run and Baldwin had a duty to maintain the property reasonably free from contamination and not cause damage to the water supply or neighboring property, and they have failed to do so.

41. Pic-N-Run and Baldwin maintained the property negligently and such negligence has resulted in the release of hazardous waste into the soil and ground water.

42. Milam and Eldridge failed to adequately supervise its work and the work of its subcontractor performed at the property. Such negligence has

resulted, at least in part, in the release of hazardous waste into the soil and ground water.

43.   The above described negligence has violated the requirements of federal and Arizona statutory law and such actions constitute negligence per se.

## COUNT FOUR
(Strict Liability Against Pic-N-Run and Baldwin)

44.   Felix realleges the allegations contained in paragraphs one through 43, above.

45.   Operation of the gas station on the site owned and/or operated by Pic-N-Run and/or Baldwin is an abnormally dangerous activity within the meaning of §519 et seq. of the Restatement (2d) of Torts.  As a result of this abnormally dangerous activity, Pic-N-Run and Baldwin are strictly liable for the resulting contamination and the mitigation of the contamination at the property.

## COUNT FIVE
(Unjust Enrichment Against Pic-N-Run, Baldwin, Milam, and Eldridge)

46.   Felix realleges the allegations contained in paragraphs one through 45, above.

47.   Felix has incurred expenses to investigate and respond to the release of hazardous substances, which was caused by individuals and entities other than Felix.  As a result, Pic-N-Run, Baldwin, Milam, and Eldridge, who are equitably and legally responsible for the contamination and clean-up at the property, have been unjustly enriched.  Felix is entitled to recover the costs that Felix has incurred and will incur relating to the investigation and response to the contamination.

## COUNT SIX

(Indemnity Against Pic-N-Run, Baldwin, Milam, and Eldridge)

48. Felix realleges the allegations contained in paragraphs one through 47, above.

49. By their wrongful acts and omissions described herein, Pic-N-Run, Baldwin, Milam, and Eldridge have subjected Felix to actual and potential liability, and for the cost of remediating the contamination at the property. Felix is not legally responsible for this contamination. Felix has incurred expenses and will continue to incur expenses and damages to minimize the threat and liability to third parties.

50. Felix is entitled to be indemnified and held harmless in whole or in part by Defendants from any liability arising from the acts or omissions of Defendants relating to the contamination at property.

## COUNT SEVEN

(Negligence Against Riedel and Service Station Equipment)

51. Felix realleges the allegations contained in paragraphs one through 50, above.

52. Riedel and Service Station Equipment had a duty to properly test the soil and remediate the soil at the property and to make the soil reasonably free from contamination, and they have failed to do so.

53. Riedel and Service Station Equipment performed their testing and remediation at the property negligently and such negligence has resulted in the spread of hazardous waste into the soil and ground water.

## COUNT EIGHT

(Negligent Misrepresentation Against Riedel and Service Station Equipment)

54. Felix realleges the allegations contained in paragraphs one through 53, above.

55. In the course of their business and for pecuniary benefit, Riedel and Service Station Equipment provided false information, including false invoicing and the October 17, 2005 letter, to Pic-N-Run, NNEPA, EPA and others regarding testing and remediation work performed at the property. Pic-N-Run, NNEPA, EPA and others reasonably relied on such false information.

56. In fact, Riedel and Service Station Equipment failed to adequately test and remediate the soil. This negligent misrepresentation caused Pic-N-Run, NNEPA, EPA and others not to take make further efforts to assure that the contamination was remediated. Such negligent misrepresentation has resulted in the spread of hazardous waste into the soil and ground water.

## COUNT NINE

(Breach of Written Contract Against Riedel and Service Station Equipment)

57. Felix realleges the allegations contained in paragraphs one through 56, above.

58. Pursuant to a written contract, evidenced by written invoices, Riedel and Service Station Equipment agreed to perform soil testing and remediation work. Felix was either a direct party to the contract or was an intended third-party beneficiary of the contract.

59. Felix was invoiced for and paid for the contractually required testing of the soil and such remediation work, through their insurance coverage.

60. Riedel and Service Station Equipment materially breached the contract by failing to properly test and remediate the soil at the property. Such breach has resulted in the spread of hazardous waste into the soil and ground water.

## COUNT TEN

(Equitable Indemnity Against Riedel and Service Station Equipment)

61. Felix realleges the allegations contained in paragraphs one through 60, above.

62. Through their words and conduct Riedel and Service Station Equipment agreed to assume responsibility for the testing and remediation of the soil at the property. Moreover, Felix paid for and reasonably relied upon this assumption of responsibility by Riedel and Service Station Equipment.

63. As a result, Felix has an equitable right to be indemnified by Riedel and Service Station Equipment for any damages sustained by Felix relating to the contamination at the property.

WHEREFORE, Felix requests the following relief:

1. A declaratory judgment that apportions liability between Defendants for all investigative and response costs relating to contamination at the property which are incurred in the future;

2. Judgment ordering Defendants to pay Felix for any and all investigative and response costs incurred to date relating to contamination at the property;

3. Judgment awarding Felix compensatory damages in an amount to be proved at trial;

4. Judgment ordering Defendants to indemnity Felix against any and all costs and liabilities incurred as a result of contamination of the ground water and soil at the property;

5. An award of costs, including attorneys' fees incurred in prosecuting this action; and

6. Whatever additional relief this Court deems just and proper.

DATED this 6th day of May, 2009

                    SHORALL MCGOLDRICK BRINKMANN

                    By:   /s/Tom Shorall
                          Tom Shorall, Jr.
                          Asa W. Markel
                          Kim Robert Maerowitz
                          Attorney for Plaintiffs