Shorall McGoldrick Brinkmann
1232 east Missouri avenue
phoenix, arizona  85014
602.230.5400
602.230.5432 (fax)

Tom Shorall, Jr., #010456
Asa W. Markel, #022578
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

DANIEL FELIX and DOROTHY FELIX,

          Plaintiffs,

  vs.

PIC-N-RUN, INC., an Arizona
corporation; MILAM BUILDING
ASSOCIATES, INC., a Texas
corporation; STELLA JEANETTE
ELDRIDGE; VERNON W. ELDRIDGE;
the ENVIRONMENTAL PROTECTION
AGENCY, an agency of United States
Federal Government; THE NAVAJO
NATION; THE NAVAJO NATION
ENVIRONMENTAL PROTECTION
AGENCY, an agency of the Navajo
Nation; SERVICE STATION
EQUIPMENT & SALES CO. INC., an
Arizona corporation; UNDERGROUND
ANALYTICAL SERVICES, INC., an
Arizona corporation; PETROLEUM
SYSTEMS INCORPORATED, an
Arizona corporation;  SPENCER
RIEDEL; the ESTATE OF SYBIL
BALDWIN,

          Defendants.

Cause No. 3:09-cv-8015-JAT

**SECOND AMENDED COMPLAINT**

(Assigned to the
Honorable James A. Teilborg)

For their Complaint, Plaintiffs DANIEL FELIX and DOROTHY FELIX (hereinafter jointly referred to as "Felix"), allege as follows:

<u>THE PARTIES</u>

1.      Felix has done business in the State of Arizona in the name of Shiprock Construction Company, an unincorporated business.

2.      Defendant PIC-N-RUN, INC ("Pic-N-Run") is an Arizona corporation doing business in the State of Arizona.

3.      Defendant MILAM BUILDING ASSOCIATES, INC. ("Milam") is, upon information and belief, a Texas corporation doing business in the State of Arizona.

4.      Defendants STELLA JEANETTE ELDRIDGE and VERNON W. ELDRIDGE (hereinafter jointly referred to as "Eldridge") are officers of Milam or represented themselves as officers of Milam and/or set themselves out as doing business as Milam.

5.      Defendant THE ENVIRONMENTAL PROTECTION AGENCY ("EPA") is an agency of the United States Federal Government.

6.      Defendant THE NAVAJO NATION ("Navajo Nation") is a Native American tribe.

7.      Defendant THE NAVAJO NATION ENVIRONMENTAL PROTECTION AGENCY ("NNEPA") is an agency of the Navajo Nation.

8.      Defendant SERVICE STATION EQUIPMENT & SALES CO. INC., ("Service Station Equipment") is an Arizona corporation doing business in the State of Arizona.

9.      Defendant UNDERGROUND ANALYTICAL SERVICES, INC. ("Underground Analytical") is an Arizona corporation doing business in the State of Arizona.

10.    Defendant    PETROLEUM    SYSTEMS    INCORPORATED ("Petroleum Systems") is an Arizona corporation doing business in the State of Arizona.

11.    Defendant SPENCER RIEDEL ("Riedel") is an officer of Service Station Equipment and Underground Analytical or represented himself as an officer of those Defendants and/or held himself out as doing business under the name of those Defendants.

12.    Defendant ESTATE OF SYBIL BALDWIN represents the interests of Decedent Sybil Baldwin, who leased land from Defendant Navajo Nation, on which Defendant Pic-N-Run operates a convenience store and gas station in Chinle, Arizona.  Decedent Baldwin, and her current co-conservators have been subleasing the subject property to Defendant Pic-N-Run and/or its owner, Ed Flores.

<u>JURISDICTION, VENUE AND NOTICE</u>

13.    Jurisdiction and venue over count one of this Second Amended Complaint is provided by 42 U.S.C. § 6972(a).

14.    Jurisdiction over counts two through fourteen of this Second Amended Complaint exists as supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  This action is properly brought in this District pursuant to 42 U.S.C. § 6972(a).

15.    All the acts and events complained of in this Second Amended Complaint occurred in the State of Arizona.

16.    Prior to the filing of the original Complaint, each of the Defendants against whom the claim pursuant to 42 U.S.C. § 6972(a) contained in count one is alleged, along with the EPA Administrator, the EPA Regional Administrator, and the United States Attorney General, was served with a notice of the violations alleged herein.  The notice was sent via registered mail, return receipt

requested, pursuant to 40 C.F.R. § 254.2. Notice was subsequently sent in the same manner to the Defendants regarding the present Second Amended Complaint.

17.     The statutory violations alleged herein include release of "hazardous waste" as defined by subchapter III of the Resources Conservation Recovery Act ("RCRA"), 42 U.S.C. § 6921. Pursuant to the express exemptions for actions brought under subchapter III, contained in 42 U.S.C. § 6972(b) & (c), the RCRA delay after notice requirements do not apply.

<u>THE UNDERLYING FACTS</u>

18.     The Navajo Nation is the owner of real property located at the southeast corner of the intersection of Navajo Route 7 and C Street in Chinle, Apache County, Arizona (the "property"). The property is governed by both the EPA and NNEPA.

19.     For many years, Sybil Y. Baldwin operated a convenience store and gas station, under the name Baldwin's Mini Mart, pursuant to a lease of the property by the Navajo Nation to Baldwin. On December 23, 1995, the lease from the Navajo Nation to Baldwin was renewed.

20.     In the lease for the property, the Navajo Nation limited the commercial uses to which the property could be put and included in those limited uses, the operation of a gasoline service station.

21.     Upon information and belief, the operation of a gasoline service station is one of the highest and best uses for the property.

22.     During the course of Baldwin's operation of Baldwin's Mini Mart on the property, underground storage tanks (UST's) were used to store gasoline on the property.

23.    Upon information and belief, the UST's used by Baldwin's Mini Mart on the property were not equipped with leak detection or corrosion control systems.

24.    Subsequent testing of the soils at the property have revealed that leaded gasoline is present in the soil.

25.    The presence of leaded gasoline in the soil at the property indicates that gasoline spills pre-dating the mid-1990's occurred.

26.    Baldwin utilized UST's at the property from at least the 1970's.

27.    On December 9, 1997, Baldwin subleased the premises to Pic-N-Run for the operation of a convenience store and gas station. Pic-N-Run operated a gas station on the property from that date to the present.

28.    In June, 2004, Pic-N-Run removed three USTs from the property.

29.    Upon information and belief, the UST's removed from the property by Pic-N-Run in 2004 were not equipped with leak detection or corrosion control systems.

30.    For the June, 2004 UST removal, Pic-N-Run retained Underground Analytical to determine what environmental clean-up would be required for leakage from the UST's.

31.    For the June, 2004 UST removal, Underground Analytical oversaw the analysis of soils around the area from which the UST's were removed.

32.    During the June, 2004 UST removal, Riedel was the designated "ADEQ certified" party present for purposes of overseeing the environmental compliance and impacts of the UST removal.

33.    Upon information and belief, on or about August 6, 2004, the EPA and NNEPA assumed control over environmental evaluation and remediation of the property.

34.    In a report, dated August 6, 2004, Riedel, writing for Underground Analytical, indicated that certain contaminants in the soil around the site of the June, 2004 UST removal exceeded EPA tolerances for those substances.

35.    In an undated letter referring to the June, 2004 UST removal and a laboratory report dated April 14, 2006, the EPA indicated that the soils at the property were within EPA standards and that neither the EPA nor the NNEPA would be requiring any further environmental clean-up of the property.

36.    Under the supervision of Pic-N-Run and the EPA and NNEPA, Riedel, Underground Analytical, and Service Station Equipment applied organic compounds to the gasoline spills detected at the site in 2004, for the purpose of treating the gasoline contamination, and then ceased remediation efforts, leaving the site with gasoline in the soil.

37.    In its August, 27, 2009 RCRA § 7003 order, the EPA now indicates that contamination in the soils at the property was caused in part by leaking from UST's that occurred prior to the March, 2005 construction at the property, in which Felix was involved.

38.    On July 12, 2004, Pic-N-Run entered into an agreement with Milam and/or Eldridge wherein Milam and/or Eldridge agreed to provide labor, equipment, and materials for the remodeling of the Pic-N-Run convenient store and gas station located at the property.  Such work included construction of above-ground storage tanks.

39.    Upon information and belief, at some time prior to April, 2005, Pic-N-Run entered into an agreement with Service Station Equipment, whereby Service Station Equipment would install or oversee installation of a leak detection system for Pic-N-Run's gasoline storage tanks.

40.     Recent examinations of the property have revealed that no leak detection system was ever installed by Service Station Equipment at the property.

41.     On December 24, 2004, Milam and/or Eldridge entered into an agreement with Felix, wherein Felix, as a subcontractor, agreed to form and/or pour concrete for the remodeling at the property.

42.     On July 31, 2007, Pic-N-Run filed a Complaint in the District Court of the Navajo Nation, Judicial District of Chinle, Arizona against Felix, Milam, and Eldridge, alleging, among other things, that on March 21, 2005, an employee of Felix drove a stake into an underground gasoline supply line at the property, causing a gasoline leak.

43.     On October 17, 2005, Riedel individually and on behalf of Service Station Equipment sent a letter to NNEPA, copied to Pic-N-Run, stating that the gasoline spill had actually occurred in September 2005 and was immediately detected.

44.     The letter, referred to in paragraph 43, above, further stated that Service Station Equipment had immediately commenced remediation of the affected soil, and would continue such remediation until contamination of the soil had been significantly reduced.

45.     Felix was invoiced for and paid for testing of the soil and remediation as provided by Service Station Equipment, through their insurance coverage.

46.     Felix first became aware of the October 21, 2005 letter in February, 2009.

47.     Riedel and Service Station Equipment had first been retained by Pic-N-Run to install a leak detection system at the property.

48.   Riedel and Service Station Equipment failed to install any leak detection system at the property.

49.   Among Riedel and Service Station Equipment's representations, was the representation that under the supervision of Pic-N-Run and the EPA and NNEPA, Riedel, Underground Analytical, and Service Station Equipment applied organic compounds to the gasoline spills detected at the site in 2005, for the purpose of treating the gasoline contamination, and then ceased remediation efforts, leaving the site with gasoline in the soil.

50.   There is still soil contamination from release of hazardous waste at the property and groundwater contamination extending to property boundaries and beyond, creating an imminent and substantial endangerment to the public health and environment.   The property characterization data indicate that, throughout the property, there have been past hazardous waste releases containing organic lead.

51.   Neither Pic-N-Run as operator of the gas station at the property, nor Milam, as Pic-N-Run's general contractor at the property, maintained any leak detection equipment during the 2005 renovation of the gas station.

52.   Neither Pic-N-Run as operator of the gas station at the property, nor Milam, as Pic-N-Run's general contractor at the property, retained any on-site environmental consultants, nor did either defendant provide any formal contingency plans for gasoline leaks or spills to the subcontractors employed during the 2005 renovation of the gas station.

53.   Pic-N-Run through its agents, Riedel and Underground Analytical, decided to treat the accumulated gasoline in the soil from spills through 2004, by applying ineffectual bio-remediation chemicals and leaving the gasoline in the soil to inexplicably become benign.

54.     Pic-N-Run's decision to leave the gasoline contamination in the soil under the property as the final phase of its treatment of the gasoline rendered the soil under the property a waste treatment, storage, and disposal facility as defined in federal environmental regulations.

55.     The EPA and NNEPA specifically allowed Pic-N-Run to convert the soil beneath the property into a waste treatment, storage, and disposal facility when those agencies ceased oversight of remediation at the property in or around 2006, and allowed Pic-N-Run to leave the gasoline contamination in the soil.

56.     Through written correspondence from late 2006 through the present, EPA and NNEPA have required that Felix bear primary or sole responsibility for clean-up of hazardous waste at the property.

57.     Through its August 27, 2009 RCRA § 7003 order, the EPA continues to require Felix, by holding Felix jointly and severally liable with the other defendants in this action, to incur expenses beyond any possible amount of fault that can be attributable to Felix for the environmental contamination of the property.

58.     The EPA's August 27, 2009 RCRA § 7003 order was issued eight (8) months after the commencement of this lawsuit.

59.     The EPA's August 27, 2009 RCRA § 7003 order does not impose any liability for the gasoline spills at the property on the EPA itself, the NNEPA, or Riedel or his various entities.

60.     Felix has incurred, and will continue to incur, expenses in relation to the clean-up of the property required by EPA and NNEPA in an amount which exceeds the jurisdictional amount of this Court.

## COUNT ONE

(Declaratory Relief Under RCRA Against All Defendants)

61.    Felix realleges the allegations contained in paragraphs one through 60, above.

62.    This Count is brought pursuant to 42 U.S.C. § 6972(a), RCRA.

63.    By virtue of it being the owner of the property, the Navajo Nation is the owner of a facility from which hazardous waste is being released, within the meaning of 42 U.S.C. § 6972(a).  The NNEPA is both an agent of the Navajo Nation, and with its authority over environmental safety at the property, an operator of a facility within the meaning of 42 U.S.C. § 6972(a).  Specifically, as owner and operator of the relevant facility, the Navajo Nation and NNEPA failed to:

a.    Maintain a containment and detection system for hazardous waste at the property.  40 C.F.R. § 264.193.

b.    Monitor and inspect the facility often enough to detect leaks, and keep a schedule of such inspections.  40 C.F.R. §§ 264.15(a) and (b).

c.    Monitor and inspect the relevant gasoline tanks often enough to detect leaks.  40 C.F.R. § 264.195.

d.    Cease using the relevant gasoline tank after a leak, remove the tank from the property, and notify the EPA Regional Administrator within twenty-four (24) hours of the leak, and then file a report with the EPA within thirty (30) days thereafter.  40 C.F.R. § 264.196.

e.    Maintain a contingency plan for the release of gasoline at the property, which plan was required to be used at the time of any gasoline leak.  40 C.F.R. § 254.51.

f.      Appoint an emergency coordinator for the occurrence of any leaks, who was required to immediately identify the precise cause of the leak, notify local authorities of the leak, and immediately arrange for treatment of the affected area.  40 C.F.R. § 264.56.

g.      Train all employees, including the emergency coordinator, at the property to act in compliance with EPA regulations.  40 C.F.R. § 264.16.

h.      Remove or remediate all residue, contaminated system components, and contaminated soils after any leak.  40 C.F.R. § 264.197.

i.      Ensure the ability to remediate any damage from gasoline leaks by maintaining insurance coverage in compliance with EPA regulations.  40 C.F.R. § 264.147(a).

j.      Contribute to the remediation of an imminent and substantial endangerment to human health and the environment, as defined in 42 U.S.C. § 6972(a)(1)(B), posed by gasoline contamination in the soil and its likely affect on local water supplies, which was caused by the actions of the Navajo Nation and NNEPA.

64.    The Navajo Nation was a constructive owner of UST's utilized at the property by virtue of restricting the commercial uses of the property, deriving rental income based upon the amount of gasoline sold at the property, and taking an active part, through its agent the NNEPA, in the environmental evaluation and remediation of the site during and after removal of UST's, and has violated 42 U.S.C. § 6927(a) by failing to:

a.      Ensure that leaks and spills did not occur in or from the UST's used at the property, pursuant to 40 C.F.R. § 280.30(a).

b.      Maintain corrosion protection for the UST's used at the property, pursuant to 40 C.F.R. § 280.31.

c.      Report all releases of gasoline from the UST's used at the property into the property's soil, pursuant to 40 C.F.R. § 280.34(a)(2).

d.      Maintain records of corrosion expert's opinions or documentation of corrosion repair equipment used on UST's used and removed from the property, pursuant to 40 C.F.R. § 280.34(b).

e.      Monitor the possibility of leakage in the UST's used at the property at least every thirty (30) days, pursuant to 40 C.F.R. § 280.41(a).

f.      Maintain leak detection systems or appropriate specifications designed to minimize the effect of leaks in the piping connected to UST's used at the property, pursuant to 40 C.F.R. § 280.41(b).

g.      Maintain records of compliance with UST regulations during the course of use of UST's at the property, pursuant to 40 C.F.R. § 280.45.

h.      Immediately clean and contain spills from UST's at the property, pursuant to 40 C.F.R. § 280.53(a).

i.      Contribute to the remediation of an imminent and substantial endangerment to human health and the environment, as defined in 42 U.S.C. § 6972(a)(1)(B), posed by gasoline contamination in the soil and its likely affect on local water supplies, which was caused by the actions of the Navajo Nation.

65.      By virtue of their operation of a gas station located at the property, Pic-N-Run and the Estate of Sybil Baldwin are operators of a facility where hazardous waste was released within the meaning of 42 U.S.C. § 6972(a).  The Estate of Sybil Baldwin also carries owner/operator liability for Pic-N-Run's gas station by virtue of the Estate being Pic-N-Run's sublessor for the underlying property.  Specifically, as operators of the relevant facility, Pic-N-Run and Estate of Sybil Baldwin failed to:

a.     Maintain a containment and detection system for hazardous waste at the property.  40 C.F.R. § 264.193.

b.     Monitor and inspect the facility often enough to detect leaks, and keep a schedule of such inspections.  40 C.F.R. §§ 264.15(a) and (b).

c.     Monitor and inspect the relevant gasoline tanks often enough to detect leaks.  40 C.F.R. § 264.195.

d.     Cease using the relevant gasoline tank after a leak, remove the tank from the property, and notify the EPA Regional Administrator within twenty-four (24) hours of the leak, and then file a report with the EPA within thirty (30) days thereafter.  40 C.F.R. § 264.196.

e.     Maintain a contingency plan for the release of gasoline at the property, which plan was required to be used at the time of any gasoline leak.  40 C.F.R. § 254.51.

f.     Appoint an emergency coordinator for the occurrence of any leaks, who was required to immediately identify the precise cause of the leak, notify local authorities of the leak, and immediately arrange for treatment of the affected area.  40 C.F.R. § 264.56.

g.     Train all employees, including the emergency coordinator, at the property to act in compliance with EPA regulations.  40 C.F.R. § 264.16.

h.     Remove or remediate all residue, contaminated system components, and contaminated soils after any leak.  40 C.F.R. § 264.197.

i.     Ensure the ability to remediate any damage from gasoline leaks by maintaining insurance coverage in compliance with EPA regulations.  40 C.F.R. § 264.147(a).

j.     Ensure that leaks and spills did not occur in or from the UST's used at the property, pursuant to 40 C.F.R. § 280.30(a).

k.      Maintain corrosion protection for the UST's used at the property, pursuant to 40 C.F.R. § 280.31.

l.      Report all releases of gasoline from the UST's used at the property into the property's soil, pursuant to 40 C.F.R. § 280.34(a)(2).

m.      Maintain records of corrosion expert's opinions or documentation of corrosion repair equipment used on UST's used and removed from the property, pursuant to 40 C.F.R. § 280.34(b).

n.      Monitor the possibility of leakage in the UST's used at the property at least every thirty (30) days, pursuant to 40 C.F.R. § 280.41(a).

o.      Maintain leak detection systems or appropriate specifications designed to minimize the effect of leaks in the piping connected to UST's used at the property, pursuant to 40 C.F.R. § 280.41(b).

p.      Maintain records of compliance with UST regulations during the course of use of UST's at the property, pursuant to 40 C.F.R. § 280.45.

q.      Immediately clean and contain spills from UST's at the property, pursuant to 40 C.F.R. § 280.53(a).

r.      Contribute to the remediation of an imminent and substantial endangerment to human health and the environment, as defined in 42 U.S.C. § 6972(a)(1)(B), posed by gasoline contamination in the soil and its likely affect on local water supplies, which was caused by the actions of Pic-N-Run and the Estate of Baldwin.

66.      By virtue of their involvement in the construction at the property alleged to have contributed to the soil contamination, Milam and Eldridge are contributors to and generators of a hazardous waste release that presents an imminent and substantial endangerment to the public health and environment

within the meaning of 42 U.S.C. § 6972(a).   Specifically, as generators of hazardous waste at the relevant facility, Milam and Eldridge failed to:

a.      Determine if any gasoline leaks resulted in hazardous waste.   40 C.F.R. § 262.11.

b.      Maintain hazardous waste in containers for no more than ninety (90) days in the event a permit for such waste was not obtained from the EPA.   40 C.F.R. § 262.34.

c.      Comply with EPA reporting and record-keeping regulations for the relevant hazardous waste.  40 C.F.R. §§ 262.12 and .40.

d.      Contribute to the remediation of an imminent and substantial endangerment to human health and the environment, as defined in 42 U.S.C. § 6972(a)(1)(B), posed by gasoline contamination in the soil and its likely affect on local water supplies, which was caused by the actions of Milam and Eldridge.

67.     By virtue of their involvement in the testing and claimed remediation, including treatment and disposal, of the soil contamination at the property and representations relating thereto, Underground Analytical, Service Station Equipment and Riedel are contributors to and generators of a hazardous waste release that presents an imminent and substantial endangerment to the public health and environment within the meaning of 42 U.S.C. § 6972(a).  Specifically, as generators of hazardous waste at the relevant facility, Underground Analytical, Service Station Equipment and Riedel failed to:

a.      Properly determine the extent of the hazardous waste.   40 C.F.R. § 262.11.

b.      Properly test the hazardous waste in accordance with EPA requirements.   40 C.F.R. § 262.11.

c.     Comply with EPA reporting and record-keeping regulations for the relevant hazardous waste.  40 C.F.R. §§ 262.12 and .40.

d.     Contribute to the remediation of an imminent and substantial endangerment to human health and the environment, as defined in 42 U.S.C. § 6972(a)(1)(B), posed by gasoline contamination in the soil and its likely affect on local water supplies, which was caused by the actions of Underground Analytical, Service Station Equipment, and Riedel.

68.     The property characterization data indicate that, throughout the property, there have been past hazardous waste releases containing organic lead.  Lead and the constituent elements of gasoline are classified as hazardous substances under 40 C.F.R. §§ 261.31 and .32.  However, EPA and NNEPA have improperly failed to require further clean-up of previous releases of hazardous waste at the property, as required by 42 U.S.C. § 6961(a), even though correspondence shows that EPA and NNEPA oversaw post-UST removal evaluation of the site, and were apprised by Underground Analytical's report of the excessive amounts of contaminants at the property.  Moreover, EPA and NNEPA have improperly reversed their decision as to the existence of contaminants in the soil at the property due to UST leaks and have entered a RCRA § 7003 order requiring Felix to bear responsibility for the present clean-up at the property even though Felix was not involved in the maintenance or removal of UST's from the property, even though RCRA § 7003 does not provide for RCRA jurisdiction over AST's, and even though EPA and NNEPA had previously declared the site clean. Thus, EPA and NNEPA are proper parties pursuant to 42 U.S.C. § 6972(a).

69.     Felix is entitled to a declaratory judgment pursuant to 42 U.S.C. § 6972 and 28 U.S.C. § 2201 and/or equitable relief entitling Felix to recover all

costs incurred to date to investigate and respond to the claimed contamination at the property.

70.    Felix is entitled to a declaratory judgment pursuant to 42 U.S.C. § 6972 and 28 U.S.C. § 2201 determining that Defendants are solely or partially liable for investigative and response costs which are incurred in the future relating to the contamination at the property.

<u>COUNT TWO</u>

(Recovery of Remedial Action Costs under A.R.S. § 49-285 Against

Pic-N-Run and Baldwin)

71.    Felix realleges the allegations contained in paragraphs one through 70, above.

72.    Felix has incurred certain costs and will incur further costs as a result of the mitigation of hazardous substances at the property which were released prior to and during the time Pic-N-Run and/or Baldwin operated a gas station at the property.

73.    Felix is also entitled to a declaratory judgment that Pic-N-Run and Baldwin are liable for future remedial action costs.

<u>COUNT THREE</u>

(Negligence Against Pic-N-Run, Baldwin, Milam, and Eldridge)

74.    Felix realleges the allegations contained in paragraphs one through 73, above.

75.    Pic-N-Run and Baldwin had a duty to maintain the property reasonably free from contamination and not cause damage to the water supply or neighboring property, and they have failed to do so.

76.   Pic-N-Run and Baldwin maintained the property negligently and such negligence has resulted in the release of hazardous waste into the soil and ground water.

77.   Milam and Eldridge failed to adequately supervise its work and the work of its subcontractor performed at the property.   Such negligence has resulted, at least in part, in the release of hazardous waste into the soil and ground water.

78.   The above described negligence has violated the requirements of federal and Arizona statutory law and such actions constitute negligence *per se.*

<u>COUNT FOUR</u>

(Strict Liability Against Pic-N-Run and Baldwin)

79.   Felix realleges the allegations contained in paragraphs one through 78, above.

80.   Operation of the gas station on the site owned and/or operated by Pic-N-Run and/or Baldwin is an abnormally dangerous activity within the meaning of §519 *et seq.* of the Restatement (2d) of Torts.   As a result of this abnormally dangerous activity, Pic-N-Run and Baldwin are strictly liable for the resulting contamination and the mitigation of the contamination at the property.

<u>COUNT FIVE</u>

(Unjust Enrichment Against Pic-N-Run, Baldwin, Milam, and Eldridge)

81.   Felix realleges the allegations contained in paragraphs one through 80, above.

82.   Felix has incurred expenses to investigate and respond to the release of hazardous substances, which was caused by individuals and entities other than Felix.   As a result, Pic-N-Run, Baldwin, Milam, and Eldridge, who are equitably and legally responsible for the contamination and clean-up at the

property, have been unjustly enriched.  Felix is entitled to recover the costs that Felix has incurred and will incur relating to the investigation and response to the contamination.

COUNT SIX

(Indemnity Against Pic-N-Run, Baldwin, Milam, and Eldridge)

83.    Felix realleges the allegations contained in paragraphs one through 82, above.

84.    By their wrongful acts and omissions described herein, Pic-N-Run, Baldwin, Milam, and Eldridge have subjected Felix to actual and potential liability, and for the cost of remediating the contamination at the property. Felix is not legally responsible for this contamination. Felix has incurred expenses and will continue to incur expenses and damages to minimize the threat and liability to third parties.

85.    Felix is entitled to be indemnified and held harmless in whole or in part by Defendants from any liability arising from the acts or omissions of Defendants relating to the contamination at property.

COUNT SEVEN

(Negligence Against Riedel and Service Station Equipment)

86.    Felix realleges the allegations contained in paragraphs one through 85, above.

87.    Riedel and Service Station Equipment had a duty to properly test the soil and remediate the soil at the property and to make the soil reasonably free from contamination, and they have failed to do so.

88.    Riedel and Service Station Equipment had a duty to properly install a leak detection system at the property pursuant to their undertaking to improve the property and make it fit for use as a gasoline service station.

89.     Riedel and Service Station Equipment performed their installation, testing and remediation at the property negligently and such negligence has resulted in the spread of hazardous waste into the soil and ground water.

## COUNT EIGHT

(Negligent Misrepresentation Against Riedel and Service Station Equipment)

90.     Felix realleges the allegations contained in paragraphs one through 89, above.

91.     In the course of their business and for pecuniary benefit, Riedel and Service Station Equipment provided false information, including false invoicing and the October 17, 2005 letter, to Pic-N-Run, NNEPA, EPA and others regarding testing and remediation work performed at the property.  Pic-N-Run, NNEPA, EPA and others reasonably relied on such false information.

92.     In fact, Riedel and Service Station Equipment failed to adequately test and remediate the soil. This negligent misrepresentation caused Pic-N-Run, NNEPA, EPA and others not to make further efforts to assure that the contamination was remediated.   Such negligent misrepresentation has resulted in the spread of hazardous waste into the soil and ground water.

93.     Riedel and Service Station Equipment have also negligently represented that a leak detection system had been installed at the property and had aided in remediation of contamination at the property, however, no such leak detection system was ever installed by Riedel or Service Station Equipment, which has caused and/or contributed to the spread of hazardous waste into the soil and ground water at the property.

/ / /

## COUNT NINE

(Breach of Written Contract Against Riedel and Service Station Equipment)

94.     Felix realleges the allegations contained in paragraphs one through 93, above.

95.     Pursuant to a written contract, evidenced by written invoices, Riedel and Service Station Equipment agreed to perform soil testing and remediation work. Felix was either a direct party to the contract or was an intended third-party beneficiary of the contract.

96.     Felix was invoiced for and paid for the contractually required testing of the soil and such remediation work, through their insurance coverage.

97.     Riedel and Service Station Equipment materially breached the contract by failing to properly test and remediate the soil at the property. Such breach has resulted in the spread of hazardous waste into the soil and ground water.

## COUNT TEN

(Equitable Indemnity Against Riedel and Service Station Equipment)

98.     Felix realleges the allegations contained in paragraphs one through 97, above.

99.     Through their words and conduct Riedel and Service Station Equipment agreed to assume responsibility for the testing and remediation of the soil at the property. Moreover, Felix paid for and reasonably relied upon this assumption of responsibility by Riedel and Service Station Equipment.

100.    Riedel and Service Station Equipment also failed to install a leak detection system as expected by the owners and operators of the property, and as represented to all parties to this lawsuit, which was a cause and/or contributor to the spread of contamination at the property.

101.   As a result, Felix has an equitable right to be indemnified by Riedel and Service Station Equipment for damages sustained by or claimed against Felix relating to the contamination at the property.

COUNT ELEVEN

(Fraudulent Transfer Against Defendants Riedel, Service Station Equipment, Underground Analytical, and Petroleum Systems)

102.   Felix realleges the allegations contained in paragraph one through 101, above.

103.   Defendants Riedel, Service Station Equipment, and Underground Analytical have transferred all or substantially all of their assets to Petroleum Systems.

104.   Defendants Riedel, Service Station Equipment, and Underground Analytical intended to evade paying for their share of liability in this case by transferring all or substantially all of their assets to Petroleum Systems, as the transfer of assets occurred after notice was given, by formal correspondence, to Riedel of the nature and extent of Felix's claims in this lawsuit.

105.   Defendants Riedel, Service Station Equipment, and Underground Analytical did not receive reasonable value in exchange for their transfer of assets to Petroleum Systems.

106.   Defendants Riedel, Service Station Equipment, and Underground Analytical transferred all or substantially all of their assets to Petroleum Systems, knowing that such transfer would render each of the transferring Defendants unable to pay liabilities imposed in this litigation.   Riedel's contracting licenses are now held by Petroleum Systems, rather than Riedel's previous entities: Underground Analytical and Service Station and Equipment.

107.   The assets transferred from Defendants Riedel, Service Station Equipment, and Underground Analytical to Petroleum Systems, should be declared available for payment of the transferring Defendants' liabilities imposed in this litigation.

## COUNT TWELVE

(Equitable Subrogation Against Riedel, Service Station Equipment, and Underground Analytical)

108.   Felix realleges the allegations contained in paragraph one through 107, above.

109.   Riedel, Service Station Equipment, and Underground Analytical have caused all or a portion of the contamination at the property, by reason of their past failure to install a leak detection system at the property, their failure to property remediate the property, and their representations to other parties in this litigation that remediation had previously occurred.

110.   Felix has been forced to pay for the evaluation and remediation of the property, without contribution from any other party.

111.   Equity requires that Riedel, Service Station Equipment, and Underground Analytical pay for their shares in the liability for the contamination of the property, including reimbursement to Felix for amounts expended in remediating the property.

## COUNT THIRTEEN

(Attorneys' Fees Against Baldwin, Pic-N-Run, Riedel, Underground Analytical, and Service Station Equipment)

112.   Felix realleges the allegations contained in paragraph one through 111, above.

113.   Felix has commenced the present litigation because Felix has had to pay for remediation of the property caused by the fault of Defendants Baldwin, Pic-N-Run, Underground Analytical, Riedel, and Service Station Equipment.

114.   Since these Defendants have not contributed to the remediation of the property, leaving the burden of remediation to Felix, Felix has been forced to commence the present litigation.

115.   At common law, Felix's attorneys' fees incurred in this action are considered damages recoverable against these Defendants.

<u>COUNT FOURTEEN</u>

(Preliminary Injunction Against EPA and NNEPA)

116.   Felix realleges the allegations contained in paragraph one through 115, above.

117.   EPA is a party to the present lawsuit, and was a party when this lawsuit was filed in January of 2009.

118.   In January of 2009 EPA had not initiated any administrative proceedings with respect to the subject property.

119.   In August of 2009, eight months after the filing of this lawsuit, EPA entered a RCRA § 7003 order holding Felix and other parties to this lawsuit jointly and severally liable for the environmental clean-up of the property.

120.   EPA does not have jurisdiction under RCRA to issue a RCRA § 7003 order against Felix, a party that has not been implicated in any of the previous UST spills at the property.   Thus, the EPA's order violates the jurisdictional limits imposed by RCRA.

121.   This Court is empowered to restrain administrative action that is commenced after the commencement of this lawsuit.

122.   Felix will be irreparably harmed should EPA enforce its August, 2009 order against Felix, as Felix is not able to fund a $4 million remediation of the property.

123.   Felix is likely to succeed on the merits of this lawsuit given that much of the contamination in issue was created before Felix became involved with the property, and even if it is proved that Felix caused a gasoline leak in 2005, the extent of that leak would have been minimal had it not been for Pic-N-Run's failure to install leak detection equipment at the property.

124.   The balance of equities favors protecting Felix by injunction, since Felix has been the only party actually paying for the evaluation and remediation of the property.

125.   An injunction protecting Felix is consonant with the public interest, since Felix has been paying for evaluation and remediation of the property, and will continue to do so as long as its insurance funding is available.

126.   Felix is entitled to a preliminary injunction restraining EPA and NNEPA from enforcing the terms of EPA's August, 2009 order.

WHEREFORE, Felix requests the following relief:

1.      A declaratory judgment that apportions liability between Defendants for all investigative and response costs relating to contamination at the property which are incurred in the future;

2.      Judgment ordering Defendants to pay Felix for any and all investigative and response costs incurred to date relating to contamination at the property;

3.      Judgment awarding Felix compensatory damages in an amount to be proved at trial;

4.     Judgment ordering Defendants to indemnity Felix against any and all costs and liabilities incurred as a result of contamination of the ground water and soil at the property;

5.     An award of costs, including attorneys' fees incurred in prosecuting this action, pursuant to 28 U.S.C. § 1920, 42 U.S.C. § 6972(e), Ariz. Rev. Stat. Ann. § 12-341.01, and the common law doctrine of "tort of another;" and

6.     Whatever additional relief this Court deems just and proper.


DATED this 22nd day of October, 2009

SHORALL MCGOLDRICK BRINKMANN


By:   /s/ Asa W. Markel
          Tom Shorall, Jr.
          Asa W. Markel
          Attorney for Plaintiffs


ORIGINAL of the foregoing e-filed
this 22nd day of October, 2009, with:

Clerk of Court
U.S. District Court
     District of Arizona
401 West Washington
Phoenix, Arizona 85003

COPIES of the foregoing e-served
this 22nd day of October, 2009, on:

The Hon. James A. Teilborg
U.S. District Court
     District of Arizona
401 West Washington
Phoenix, Arizona 85003

David Armstrong, Esq.
BALLARD SPAHR LLP
3300 N. Central Avenue, Suite 1800
Phoenix, Arizona 85012
Attorneys for Defendant Pic-N-Run, Inc.

Dean R. Cox, Esq.
LAW OFFICES OF DEAN R. COX
107 North Cortez Street, Suite 201
Prescott, Arizona 86301
Attorneys for Defendants Milam and Eldridge

Jill Elise Grant, Esq.
NORDHAUS LAW FIRM
1401 K Street NW, Suite 801
Washington, DC 20005
Attorneys for Defendant Navajo Nation EPA

Meredith Weinberg, Esq.
U.S. DEPARTMENT OF JUSTICE
Environmental & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, DC 20026-3986
Attorneys for Defendant US EPA

Maria Pellegrino Rivera, Esq.
RIVERA AND RIVERA, P.C.
2414 E. Camelback Road
Suite 700
Phoenix, AZ  85016
Attorneys for Defendants Riedel and Service Station

Sampson Martinez, Esq.
SAMPSON MARTINEZ PC
P.O. Box 2415
Gallup, New Mexico 87305-2415
Attorneys for Defendant Estate of Baldwin

COPY of the foregoing mailed this
22nd day of October, 2009 to

Craig C. Hoffman, Esq.
BALLARD SPAHR LLP
3300 N. Central Avenue, Suite 1800
Phoenix, Arizona 85012
Attorneys for Defendant Pic-N-Run, Inc.

Sal J. Rivera, Esq.
RIVERA AND RIVERA, P.C.
2414 E. Camelback Road
Suite 700
Phoenix, AZ  85016
Attorneys for Defendants Riedel and Service Station

Anthony Aguirre, Esq.
NAVAJO NATION DEPARTMENT OF JUSTICE
Natural Resources Unit
P.O. Drawer 2010
Window Rock, Arizona  86515
Attorneys for Defendant Navajo Nation EPA

Louis Denetsosie, Esq.
Attorney General, Navajo Nation
NAVAJO NATION DEPARTMENT OF JUSTICE
P.O. Box 2010
Window Rock, Arizona 86515-2010
Attorneys for Defendant Navajo Nation


 /s/  Tracy Cryan