**WO**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Daniel Felix and Dorothy Felix,

    Plaintiffs,

vs.

Pic-N-Run, Inc., an Arizona corporation; Milam Building Associates, Inc., a Texas corporation; Stella Jeanette Eldridge; Vernon W. Eldridge; Spencer Riedel; Service Station Equipment & Sales Co. Inc., an Arizona corporation; Underground Analytical Services, Inc., an Arizona Corporation; and the Estate of Sybil Baldwin,

    Defendants.

———————————————

Vernon W. Eldridge; Stella Jeanette Eldridge; Milam Building Associates, Inc.,

    Counter-Claimants,

vs.

Daniel Felix; Dorothy Felix,

    Counter- Defendants.

No. CV 09-8015-PCT-JAT

**ORDER**

| | |
|---|---|
| Vernon W. Eldridge; Stella Jeanette Eldridge; Milam Building Associates, Inc., | |
| | Cross-Claimants, |
| vs. | |
| Estate of Sybil Baldwin; Pic-N-Run, Inc.; Service Station Equipment & Sales Co., Inc.; Spencer Riedel; Underground Analytical Services, Inc., | |
| | Cross-Defendants. |

_____

Estate of Sybil Baldwin,

        Counter-Claimant,

vs.

Daniel Felix and Dorothy Felix,

        Counter-Defendants.

_____

Estate of Sybil Baldwin,

        Cross-Claimant,

vs.

Pic-N-Run, Inc., an Arizona corporation; Milam Building Associates, Inc., a Texas corporation; Stella Jeanette Eldridge; Vernon W. Eldridge; Service Station Equipment & Sales Co., Inc.; an Arizona corporation; and Spencer Riedel,

        Cross-Defendants.

Pic-N-Run, an Arizona corporation,

    Counter-Claimant,

vs.

Daniel Felix and Dorothy Felix,

    Counter-Defendants.

---

Pic-N-Run, an Arizona corporation,

    Cross-Claimant,

vs.

Milam Building Associates, Inc., a Texas corporation; Stella Jeanette Eldridge; Vernon W. Eldridge; Service Station Equipment & Sales Co., Inc., an Arizona corporation; Spencer Riedel; Underground Analytical Services, Inc., an Arizona corporation; and Estate of Sybil Baldwin,

    Cross-Defendants.

---

Service Station Equipment & Sales Co., Inc., an Arizona corporation,

    Counter-Claimant,

vs.

Daniel Felix and Dorothy Felix,

    Counter-Defendants.

---

Service Station Equipment & Sales Co., Inc., an Arizona corporation,

    Cross-Claimant,

vs.

Pic-N-Run, Inc., an Arizona corporation; Milam Building Associates, Inc., a Texas corporation; Stella Jeanette Eldridge; Vernon W. Eldridge; and Estate of Sybil Baldwin,

    Cross-Defendants

Spencer Riedel,

        Counter-Claimant,

vs.

Daniel Felix and Dorothy Felix,

        Counter-Defendants.

_____

Spencer Riedel,

        Cross-Claimant,

vs.

Pic-N-Run, Inc., an Arizona corporation; Milam Building Associates, Inc. a Texas corporation; Stella Jeanette Eldridge; Vernon W. Eldridge; and Estate of Sybil Baldwin,

        Cross-Defendants.

_____

Underground Analytical Services, Inc., an Arizona corporation,

        Counter-Claimant,

vs.

Daniel Felix and Dorothy Felix,

       Counter-Defendants.

_____

Underground Analytical Services, Inc., an Arizona corporation,

        Cross-Claimant,

vs.

Pic-N-Run, Inc., an Arizona corporation; Milam Building Associates, Inc., a Texas corporation; Stella Jeanette Eldridge; Vernon W. Eldridge; and Estate of Sybil Baldwin,

        Cross-Defendants.

Pending before the Court is a Motion to Dismiss filed by Defendants Stella Jeanette Eldridge, Vernon W. Eldridge and Milam Building Associates, Inc. (the "Milam Defendants") (Dkt. 181), and a Motion to Dismiss filed by Defendant Estate of Sybil Baldwin ("Baldwin") (Dkt. 182). A hearing was held on August 3, 2011, and the Court is now prepared to rule on the motions.

## I. BACKGROUND

The various claims, counter-claims, and cross-claims in this action revolve around the alleged contamination caused by the leakage and a spill of gasoline at a convenience store and gas station on the Navajo tribal trust land in Chinle, Arizona.[1]

The Navajo Nation leased a parcel of property to Baldwin for the operation of a convenience store and gas station. Initially, underground storage tanks were used to store gasoline on the property. In 1997, Baldwin subleased the premises to Defendant Pic-N-Run, Inc. ("Pic-N-Run"), for the continued operation of the convenience store and gas station. In June 2004, Pic-N-Run removed three underground storage tanks from the property. During the removal, Defendants Underground Analytical Services, Inc. and Spencer Riedel were hired to analyze the soil around the underground storage tanks and oversee the environmental compliance of the tank removal.

In July 2004, Pic-N-Run entered into an agreement with the Milam Defendants for the remodeling of the convenience store and gas station, and the construction of above-ground storage tanks. In December 2004, the Milam Defendants entered into an agreement with Plaintiffs Daniel Felix and Dorothy Felix, doing business as Shiprock Construction Company ("Shiprock"). Shiprock, acting as a subcontractor, agreed to pour concrete for the remodeling project at the property. In 2005, an employee of Shiprock drove a stake into a gasoline supply line on the property, which caused a release of gasoline. On July 31, 2007, Pic-N-Run filed a complaint in the District Court of the Navajo Nation against Shiprock and

---

[1] Unless otherwise specified, any further reference to "claims" in this Order includes claims asserted by Plaintiffs Daniel Felix and Dorothy Felix, as well as counter-claims and cross claims asserted by the other parties to this action.

5

1 the Milam Defendants regarding the gasoline leak.

In January 2009, Shiprock filed the present action seeking assignment and apportionment of responsibility for the cleanup and costs associated with the gasoline contamination at the property. The Defendants then filed a series of counter-claims and cross-claims against Shiprock and the other parties.

In August 2009, the Environmental Protection Agency ("EPA") issued an Administrative Order pursuant to Section 7003 of the Resource Conservation and Recovery Act ("RCRA"), codified at 42 U.S.C. § 6973. This "§ 7003 Order" stated that the Milam Defendants, Pic-N-Run, Baldwin and Shiprock caused or contributed to the contamination at issue, and ordered the parties to undertake and finance the work necessary to clean-up the contamination site. (Dkt. 125-1.) In accordance with the EPA's § 7003 Order, remedial action is proceeding at the Chinle site. The EPA has not filed an action in district court to enforce its § 7003 Order.

On May 4, 2010, the Court dismissed all claims arising under RCRA, 42 U.S.C. §§ 6901 *et seq.*, because the Court did not have subject matter jurisdiction to entertain federal claims seeking pre-enforcement review of the EPA's § 7003 Order. (Dkt. 150.) Only the parties' common law claims remain in this action.

Discovery in this action closed on December 3, 2010. With the exception of filing disclosure statements and complying with the expert disclosure deadline, no formal discovery has been conducted or propounded. The parties have unsuccessfully sought to resolve this matter through mediation.

## II.  LEGAL STANDARDS

Both the Milam Defendants and Baldwin have moved to dismiss the claims asserted against them pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.

### A.  Federal Rule of Civil Procedure 12(b)(1)

"Federal Rule of Civil Procedure 12(b)(1) allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction. . . . When subject matter jurisdiction is challenged under Federal Rule of [Civil] Procedure 12(b)(1), the plaintiff has

the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). The defense of lack of subject matter jurisdiction may be raised at any time by the parties or the court. *See* Fed.R.Civ.P. 12(h)(3).

Normally, on a Rule 12(b)(1) motion, the court is, "free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. In such circumstances, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (internal quotations and citations omitted). However, when considering a motion under Rule 12(b)(1), if the jurisdictional issue is dependant on the resolution of factual issues relating to the merits of the case, the Court applies the Rule 12(b)(6) standard of assuming that all of the allegations in the complaint are true. *Id*.

**B.     Federal Rule of Civil Procedure 12(b)(6)**

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The pleading standard in Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states "a claim to relief that is plausible on its face." *Id.*

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more

7

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Claims raised under Rule 12(b)(1) should be addressed before reasons for dismissal under Rule 12(b)(6). *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, at 138–39 (3d ed. 2004) ("[W]hen the motion is based on more than one ground, the cases are legion stating the district court should consider the Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined by the judge.").

### III. ANALYSIS

#### A. Milam Defendants' Motion to Dismiss

The Milam Defendants have moved to dismiss all claims and cross-claims against them without prejudice. The Milam Defendants argue that the Court should refrain from exercising its supplemental jurisdiction over the remaining common law claims, and, alternatively, that the remaining claims are not ripe for adjudication, because there is a lack of damages with regard to the issues in this action.

##### 1. Supplemental Jurisdiction

The Court has subject matter jurisdiction over cases involving federal questions pursuant to 28 U.S.C. § 1331, which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Subject matter jurisdiction existed in this action as a result of the parties' RCRA claims, which presented federal questions. The Court has supplemental jurisdiction over the common law claims, because "in any civil action of which the district courts have original

jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, the Court dismissed the federal RCRA claims. (Dkt. 150.) The remaining claims in this action are common law causes of action, including negligence, negligence per se, breach of contract and indemnity.

The Milam Defendants argue that, because the remaining pendent common law claims leave no federal issues before the Court, the Court should refrain from exercising supplemental jurisdiction, and dismiss this action without prejudice. Shiprock responds that the common law claims "arise under" federal law, and, therefore, the Court has federal question jurisdiction over this matter. Shiprock also argues, in the alternative, that the Court should continue exercising supplemental jurisdiction. Likewise, Pic-N-Run requests the Court, in the exercise of its discretion, retain supplemental jurisdiction over the remaining common law claims. Baldwin does not oppose dismissal.

"Under 28 U.S.C. § 1367(c)(3), a district court has discretion to elect not to exercise supplemental jurisdiction over state claims if it has dismissed the federal claims over which it had original jurisdiction." *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001) (citing *Voigt v. Savell*, 70 F.3d 1552, 1565 (9th Cir. 1995)).[2] The Supreme Court stated in dictum that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Ninth Circuit found that this

---

[2] The federal statute on supplemental jurisdiction provides:
  The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
  (1) the claim raises a novel or complex issue of State law,
  (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
  (3) the district court has dismissed all claims over which it has original jurisdiction, or
  (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. § 1367(c).

statement "simply recognizes that in the usual case in which federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state law claims." *Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Dismissal is in the discretion of the Court, because district courts are in the best position to judge the extent of resources invested in a case. *Id.* at 993–94.

The parties agree that the federal claims have been dismissed, and only common law claims remain. However, Shiprock argues that the remaining common law claims "arise under" federal law. The Supreme Court has noted that the "constant refrain" in determining whether federal question jurisdiction lies over state law claims is that "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005). The Court has reviewed of the common law claims asserted in this action. (Dkt. 73, 81, 84, 85, 86, 87.) Although arising from a common nucleus of operative fact (*i.e.*, the gasoline leak on the property), the common law claims arise under state law, not federal law. However, the common law claims do not rise to the level required for the exercise of federal jurisdiction independent of the dismissed federal RCRA claims. Therefore, the Court has supplemental, not original, jurisdiction over the common law claims asserted by the parties.

The issue before the Court now is whether it should continue exercising its supplemental jurisdiction after the federal RCRA claims have been dismissed. The parties frame the extent of resources invested in this case in different manners. The Milam Defendants and Baldwin point out that no depositions, interrogatories, or requests for admission or production have been conducted or propounded in this litigation, even though the discovery deadline elapsed. Although not disputing the lack of formal discovery, Pic-N-Run and Shiprock argue that "substantial disclosure of evidence" has occurred, and the parties have expended resources to prepare for mediation.

This action remains in the early stages of litigation, even though it has been pending

before the Court for two years. The parties have not filed motions for summary judgment, and as noted above, the parties have not expended time or resources propounding formal discovery. Further, there will be little duplication of effort in a subsequent proceeding. The efforts expended in connection with the factual investigation and the mediation are not the exclusive province of this action, and will be useful in any subsequent action.

At this time, the Court finds it would be ill-advised to continue exercising supplemental jurisdiction over the common law claims, since the federal RCRA claims were dismissed. Continued exercise of supplemental jurisdiction over the common law claims could result in inconsistent outcomes depending on the EPA's potential enforcement of the § 7003 Order, and the parties' ability to raise their federal RCRA claims in a subsequent action following any such enforcement.

Arguing against its own cause, Shiprock maintains that the common law claims "arise under" federal law, because "the claims that Shiprock and the other parties in this action are urging amount to common law apportionment of fault claims for clean-up, which is specifically permitted where RCRA liability has been established." (Dkt. 194 at p. 3.) Shiprock also contends that "the damages in this case relate to the cost of remediating a site." (Dkt. 193 at p. 3.) Assuming *arguendo* that some or all of the common law claims arise under federal law, and, therefore, give rise to federal question jurisdiction, the claims should be dismissed for the same reason the Court previously dismissed the parties' federal claims arising under RCRA. As the Court stated in its prior order:

> Various Courts have held that Article III courts lack jurisdiction to entertain a challenge to an EPA administrative order until the EPA seeks to judicially enforce the order. *See, e.g., Ross Incineration Servs., Inc. v. Browner*, 118 F. Supp. 2d 837, 843 (N.D. Ohio 2000) ("The Court agrees with the EPA that RCRA *does* preclude judicial review of § 7003 Orders, unless and until the EPA seeks actual enforcement of its Order. Accordingly, the EPA's motion to dismiss for lack of jurisdiction must be granted on this ground."); *United States v. Mobil Oil Corp.*, 1997 WL 1048911 (E.D.N.Y. 1997) (holding that court lacked jurisdiction to review a counter-claim seeking pre-enforcement review of a § 3013 EPA order).
> . . . .
> In its order, the EPA named precisely each party it found to be liable for the contamination at issue. Yet Plaintiffs, Pic-N-Run, and the Milan Defendants seek a declaration from this Court naming each party liable for the contamination at issue. Such a request constitutes a challenge to the EPA

> order in the form of challenging who the EPA found to be responsible for the contamination. For example, the Milan Defendants are seeking a declaration that they are not responsible for the contamination; rather, Plaintiffs and the cross-claim Defendants are fully responsible. If the Court were to grant such a request, the Court would be directly contravening the EPA's order, as the EPA found the Milan Defendants caused or contributed to the contamination. The same impediment holds true for all of the RCRA claims, counter-claims, and cross-claims. The parties in this lawsuit seeking relief under RCRA cannot challenge the EPA's findings and conclusions concerning those responsible for the contamination until the EPA seeks to enforce its order. Hence, because the EPA has already issue a § 7003 Order delineating those responsible for the contamination and clean-up, and because the EPA has not yet sought to enforce its order, this Court is precluded from issuing a similar RCRA declaration.
> 
> . . . .
> 
> Therefore, because the Court finds that the requested RCRA relief constitutes a challenge to the EPA's § 7003 Order, the Court is without subject matter jurisdiction to entertain the RCRA claims. Accordingly, all RCRA claims, counter-claims, and cross-claims are dismissed under Rules 12(b)(1), (h)(3).

(Dkt. 150 at pp. 8–10.) If, as Shiprock contends, the common law claims arise under federal law for the apportionment of fault for clean-up and the assessment of damages attributable to remediation costs, then the Court finds that these claims would constitute a challenge to the EPA's § 7003 Order, which the EPA has not sought to enforce. Accordingly, consistent with its prior order, the Court is precluded from issuing a declaration apportioning fault and assessing damages on the common law claims, which are alleged in connection with the same contamination that is the subject of the EPA's § 7003 Order.

Based on the foregoing, the Court will refrain from exercising supplemental jurisdiction over the remaining claims. Additionally, if the common law claims did, in fact, give rise to federal question jurisdiction, then the Court lacks jurisdiction to entertain a pre-enforcement challenge to an EPA administrative order. Based on the foregoing, dismissal of the common law claims is appropriate.

### 2. *Ripeness of Claims*

The Milam Defendants also move for dismissal on the ground that the lack of damages means this action is not ripe for adjudication. According to the Supreme Court:

> Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized

and its effects felt in a concrete way by the challenging parties."
*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). The Milam Defendants appear to make two separate arguments relating to the ripeness of this action: (1) the parties have not suffered damages; and (2) apportionment of liability is not ripe because the EPA has not sought to enforce its § 7003 Order. These arguments are intertwined in the parties' briefs, and not easily distinguishable. With respect to the first argument, Pic-N-Run has allegedly incurred damages, although not in sum certain, as a result of remediating the contamination on the property. Accordingly, this action is ripe with respect to alleged damages. With respect to the Milam Defendants' second argument, to the extent that the common law claims arise under RCRA, the Court lacks jurisdiction to determine pre-enforcement claims under RCRA. As discussed above, if the common law claims do "arise under" federal law, then the claims implicate the EPA's § 7003 Order. If the Court were to determine that one party injured another party in connection with the gasoline leakage, then the Court would be apportioning liability with respect to the same incident in which the EPA has already determined the parties are jointly and severally liable (Dkt. 125-1, ¶ 81). Until the EPA decides to judicially enforce the § 7003 Order, the Court must refrain from exercising jurisdiction over claims seeking pre-enforcement adjudication.

Based on the foregoing, the Court declines to exercise supplemental jurisdiction over the pendent common law claims. 28 U.S.C. § 1367(c)(3). The common law claims will be dismissed without prejudice, and the Court expresses no opinion as to the merits of any such claims.

**B.     Baldwin's Motion to Dismiss**

Baldwin moves to dismiss on the grounds that supplemental jurisdiction does not exist, because the common law claims arise under tribal law, and not state law. In the alternative, Baldwin argues that the Court should dismiss the claims asserted against Baldwin for failure to exhaust tribal remedies. Because the Court has determined that it will not exercise supplemental jurisdiction over the remaining common law claims, the Court does

not need to decide whether the common law claims arise under tribal law and must be addressed by a tribal court. However, the Court will address Baldwin's argument briefly. Baldwin argues that the State of Arizona does not have civil jurisdiction over the Navajo Nation, and, thus, the State of Arizona has no jurisdiction over an incident that occurred on tribal trust land. The analysis is not nearly as straightforward as Baldwin contends.

"Where nonmembers are concerned, the 'exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation.'" *Nevada v. Hicks*, 533 U.S. 353, 359 (2001) (quoting *Montana v. United States*, 450 U.S. 544, 564 (1981)). The general proposition articulated by the Supreme Court is that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Montana*, 450 U.S. at 565.

The parties to this action, with the exception of Sybil Baldwin, are non-tribal members over whom the tribal court presumptively lacks jurisdiction. There are two exceptions to this presumptive lack of jurisdiction:

> A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Id.* (internal citations omitted). Whether the claims arise under state law or tribal law pursuant to one of the exceptions requires additional analysis.

With respect to the first exception, the only contract entered into between a member of the tribe, Baldwin, and a nonmember is the sublease between Pic-N-Run and Baldwin. However, there is no evidence that the Navajo Nation is attempting to regulate the activities of the parties in this action who are non-tribal members. At a minimum, a closer analysis of the first exception with respect to the effect of the sublease on the common law claims would be required. Also, additional analysis may be required to determine whether any of the other parties have entered into "consensual relationships" through "other arrangements" as

14

1 described in the first exception.

Further, although not dispositive, the occurrence of the gasoline spillage on tribal land is relevant to the second exception. *Nevada*, 533 U.S. at 360 ("The ownership status of land, in other words, is only one factor to consider in determining whether regulation of the activities of nonmembers is 'necessary to protect tribal self-government or to control internal relations.' It may sometimes be a dispositive factor."). However, Baldwin appears to concede that the second *Montana* exception does not apply. (Dkt. 182 at p. 8.)

Additional briefing would be required to address whether the tribal court should be given a full opportunity to determine its own jurisdiction with respect to the claims. *See Boozer v. Wilder*, 381 F.3d 931, 935 (9th Cir. 2004). Regardless, the Court is not required at this time to determine whether the claims over which it is declining to exercise supplemental jurisdiction arise under state law or tribal law. In light of the denial of supplemental jurisdiction, the Court makes no determination with respect to the merits of Baldwin's arguments.

## IV. CONCLUSION

Because the Court has dismissed all the federal claims over which it had original jurisdiction, and the case is at such an early stage of the proceedings, the Court declines to exercise supplemental jurisdiction over the remaining common law claims. 28 U.S.C. § 1367(c)(3); *Gibbs*, 383 U.S. at 726.

Accordingly,

**IT IS HEREBY ORDERED** that the Milam Defendants' Motion to Dismiss (Dkt. 181) and Baldwin's Motion to Dismiss (Dkt. 182) are **GRANTED** to the extent the motions are premised upon 28 U.S.C. § 1367(c)(3).

//
//
//
//
//

**IT IS FURTHER ORDERED** that the Clerk of the Court shall dismiss this action in its entirety without prejudice.

DATED this 10th day of August, 2011.

James A. Teilborg
United States District Judge